IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW R. PERRONG<br>1657 THE FAIRWAY #131<br>JENKINTOWN, PA 19046<br><br>   Plaintiff<br><br>vs.<br><br>MONTGOMERY COUNTY<br>DEMOCRATIC COMMITTEE<br>21 E. AIRY ST.<br>NORRISTOWN, PA 19401,<br><br>MONTCO VICTORY<br>21 E. AIRY ST.<br>NORRISTOWN, PA 19401,<br><br>and<br><br>JOSEPH FOSTER<br>348 TREVOR LN.<br>BALA CYNWYD, PA 19004<br><br>   Defendants. | Case No. 2:22-cv-04475-MSG<br><br>JURY TRIAL DEMANDED |

**AMENDED COMPLAINT**

**Preliminary Statement**

1. Plaintiff Andrew R. Perrong ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. One Defendant in this action, the Montgomery County Democratic Committee, organized a Political Action Committee (PAC) named Montco Victory to solicit support for its

slate of county-level candidates in the 2019 General Election. At all times pertinent, Defendant Montco Victory was an *alter ego* of the Montgomery County Democratic Committee, sharing the same chairman and office address. Montco Victory, though its chairman and co-defendant Joseph Foster, orchestrated placing at least three illegal, campaign-related ATDS "robocalls" to the Plaintiff's telephone number.

3. The Plaintiff never consented to receive such messages.

## Parties

4. Plaintiff Andrew R. Perrong is a Pennsylvania resident, and a resident of this District.

5. Defendant Montgomery County Democratic Committee is a Political Action Committee (PAC) which is the local arm of the Democrat Party. The PAC is headquartered in Pennsylvania. Defendant Montgomery County Democratic Committee is also the successor-in-interest to the now-dissolved Montco Victory PAC.

6. Defendant Montco Victory was a PAC which Defendant Mongomery County Democratic Committee created to solicit support for Democrat candidates in the 2019. The PAC was headquartered in Pennsylvania, but was terminated in 2021.

7. Defendant Joseph Foster was at all times relevant the Chairman of both the Montgomery County Democratic Committee and Montco Victory.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated messages to the Plaintiff were placed into this District.

## **The Telephone Consumer Protection Act**

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits all Automated Calls To Protected Numbers

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Perrong's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such

3

messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

14. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

16. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes political calls. *See* FCC Enforcement Advisory: *Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

17. Importantly, this Court has already held that non-consensual, non-emergency calls placed using an ATDS or a prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that non-commercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

**Factual Allegations**

18. Defendant Montgomery County Democratic Committee is a Political Action Committee (PAC) and is the local arm of the Democrat Party.

19. Defendant Montgomery County Democratic Committee is also the successor-in-interest to the now-dissolved Montco Victory PAC.

20. Defendant Montgomery County Democratic Committee created the Defendant Montco Victory in 2019 to solicit support for its slate of county-level candidates in the 2019 General Election.

21. To solicit support for its candidates, Montco Victory relied on "robocalls" placed using an Automatic Telephone Dialing System (ATDS), colloquially known as an "Autodialer."

22. At all times pertinent, Defendant Montco Victory was an *alter ego* of the Montgomery County Democratic Committee, sharing the same chairman and office address.

Personal Liability Under The TCPA

23. Defendant Joseph Foster was at all times relevant the Chairman of *both* the Montgomery County Democratic Committee and Montco Victory and is therefore responsible for any conduct purportedly carried out only in such names.

24. Under the TCPA, an individual such as Foster may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47 U.S.C. § 217 (emphasis added).

25. Foster personally participated in the actions complained of by: (a) personally orchestrating Montco Victory as a purportedly independent organization to benefit Montgomery

5

County Democratic Committee candidates; (b) envisioning Montco Victory as an offshoot of the Montgomery County Democratic Committee; (c) personally selecting the vendor that Montco Victory used to dial phone numbers; (d) verifying and potentially drafting the scripting that would be used on the calls; (e) selecting the dialing equipment, telephone services, manpower, and suppliers of the same used to make the calls; (f) personally providing support resources for the calls, including oversight and managerial support as the chairman of both entities; (g) personally setting up accounts and telephone services for making the calls; (h) serving as the chairman of both organizations; and (i) leading, supervising, and ensuring compliance with both organizations' legal and regulatory obligations, including the TCPA.

The Calls to Mr. Perrong

26. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

27. Plaintiff's telephone number (the "Number"), 215-947-XXXX, is on the National Do Not Call Registry and has been continuously since 2005.

28. Despite this registration, the Defendants sent at least three calls placed using an ATDS to Plaintiff on October 22, 23, and 24, 2019 from the Caller ID 215-309-9122.

29. The Number is assigned to a Voice over Internet Protocol (VoIP) telephone service, which allows for voice calls to be placed over a broadband Internet connection.

30. That Number, which is assigned to a VoIP telephone service, is charged for each call it receives.

31. The VoIP telephone service for the Number is Anveo.

32. The service charges a ring charge of $0.005 for the provision of Caller ID Name lookup information for each call placed to the Number, even if the call is not answered.

33. The service also charges a per-minute charge of $0.004 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to the Number.

34. The Number is therefore "assigned to a . . . service for which the called party is charged for the call" and any calls placed to that number are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

35. Despite this, Defendants placed two calls to the Number from the caller ID 215-309-9122 on October 22 and 23, 2019. The call went to voicemail both times, but no message was left by the automated system.

36. The telephone service provider for this Caller ID is Twilio.

37. Twilio does not place calls, nor does it "register" telephone numbers. Rather, Twilio provides the telephone service for the 215-309-9122 number. Individual subscribers like Defendants can then connect this telephone service to an ATDS and use the ATDS to place calls, either directly through an on-premise ATDS like ViciDial or through the use of another vendor that provides the ATDS software through a web interface like CallFire.

38. Unlike most telephone service providers, however, Twilio supports and indeed encourages using programmable communications software, including ATDS systems like ViciDial and CallFire, on its platform. By contrast, most other telephone providers, including Plaintiff's, expressly forbid use of their services in such a way in their terms of service. *See, e.g.*, *Terms of Use*, ANVEO (May 24, 2018), http://www.anveo.com/consumer/legal.asp ("Use of Predictive Dialers, Auto Dialers, Telemarketing Devices, Lead Generators and other simular programs is prohibited. All calls made using such programs will be charged $2 per minute rate (60/60 billing interval) and $0.1 per dial attempt.").

39. Despite not answering the previous two calls and not desiring any interest to speak with any Democrat, Defendants placed another call to the Number from the caller ID 215-309-9122 on October 24, 2019.

40. When Plaintiff answered this call, there was an almost 10-second delay, silence, and an audible "click" and call center noise before the caller on the other side came onto the line.

41. The caller only came onto the line after the delay and was not on the call when Plaintiff answered it.

42. The caller, "Laryssa," with the "Montgomery County Democrats" was looking for "Andrew," and was wanting to know when Plaintiff would "fill out" and return his absentee ballot "to vote for the Montgomery County Democrat candidates."

43. Plaintiff informed "Laryssa" that he would not be voting absentee nor Democrat, and "Laryssa" thanked Plaintiff, stated that the call was "paid for by the Montco Victory," and terminated the call.

44. Upon information and belief, a PAC is required to identify itself as paying for any advertising under applicable campaign finance law. It is a violation of campaign finance law to misrepresent an advertising payor's identity.

45. The call could not possibly have been targeted toward the Plaintiff since the Plaintiff has never registered to vote as a Democrat, let alone voted for a Democrat in his life, and is not a liberal left-winger.

46. Rather, it appears Defendants selected numbers to be called sequentially (or possibly randomly) and then used publicly-available databases to identify the owner of the telephone number dialed when such randomly or sequentially selected call was answered. This inference is further supported by the fact that the calls came on sequential days.

Defendants' Use of an ATDS

47.     The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

48.     The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was *used* in violation of the TCPA centers around "whether the defendant employ[s] [ATDS] capacities to make automated calls," *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful." *Id.* at 879 (cleaned up).

49.     In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns." *Id.* at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database. *See id.*

50.     Under *Panzarella*, a system that uses a random or sequential number generator to produce each telephone number to be called from a list of telephone numbers, and then dials

those numbers, is by definition an ATDS. This is so even if the telephone numbers in the list themselves were not randomly or sequentially generated. *See id.* at 879-880.

51. The system(s) Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to use some non-automatic trigger to dial the number from a list, have the Plaintiff answer it, and only then connect it to a human being.

52. Furthermore, audible pauses, clicks, an inability to leave voicemails, and no human being on the other side of the line when the call is answered are hallmark indicia of ATDS systems, particularly ones that predictively vary the automatic calling rate to optimize time human representatives spend. It supports the inference that Defendants used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list." *Facebook*, 141 S. Ct. at 1171 n.7.

53. The calls were placed from a number serviced by the company Twilio. As stated above, Twilio provides a computerized platform designed for making high volumes of automated, sequential or random calls, primarily through being connected to an ATDS system. Twilio's website boasts the ability for its customers to make calls with "indefinite scaling," support up to 250 participants at a time, and mask caller information. *See Voice With the Power of Programmability*, TWILIO, https://www.twilio.com/voice [https://archive.ph/ktY0A].

54. Indeed, Twilio's documentation outlines in detail the computer programming code necessary to make automated calls from a list, including a computerized database of numbers, at a rate of one call per second, in addition to the code needed in order to tell the system what action to take depending on if a party answers. *See Making Calls*, TWILIO DOCS, https://www.twilio.com/docs/voice/make-calls [https://archive.ph/kVbSz].

55. As this Court has remarked, other courts have held, post-*Facebook*, that allegations similar to those as here of the absence of a relationship between the parties, the inability to leave a voicemail, pauses and delays in audio, and the random or automated nature of the automation device, are all indicia of use of a random or sequential dialing device that gives rise to the inference at the pleadings stage that an ATDS was used to make the calls. *See Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021). Post-*Facebook*, ATDS issues are summary judgment ones.

56. No facts exist here to support the conclusion that Defendants were messaging a curated list of past individuals who they have previously interacted with. Plaintiff is not a liberal left-winger, a Democrat, nor interested in anything to do with them. By contrast to a company that calls phone numbers *en masse* to the public, a company that uses a select list of customers it thinks might be interested in a promotion does not place calls using an ATDS because such calling uses a database targeting existing customers' information rather than computer-generated tables or lists of individuals to be called. *See Panzarella*, 37 F.4th at 881–882.

57. *Panzarella* stands for the proposition that, when using a list of numbers to contact people, the computer must *use* something other than a random or sequential number generator to select the numbers to be called. Other triggers, such as birthdays or account delinquency, are neither random nor sequential, and thus *using* a dialer to place calls with such criteria is not using an ATDS. *See id.* at 879-881.

58. *Facebook* did not use an ATDS because it did not use random or sequential means to select numbers to send text messages to. Rather, it used *a specific user action*, compromised account security, to send the messages. *Facebook*, 141 S. Ct. at 1168. In other words, an account data breach, not random or sequential selection, was used to send the text message. Similarly, the

Ninth Circuit recently held in *Brickman v. United States* that Facebook did not use an ATDS when it sent birthday text messages because the *birthdays*, not random or sequential number generators, were used to draw numbers to be called. 56 F.4th 688 (9th Cir. 2022).

59. Likewise, the defendant in *Panzarella* did not *use* an ATDS because it used the select criteria of delinquent borrowers to dial numbers. Put another way, delinquency, not random or sequential means, was used to select numbers from a list of numbers associated with student loan accounts and then dial them. *Panzarella*, 37 F.4th at 882.

60. Plaintiff is ignorant of the exact process by which the Defendants used the system they connected to the Twilio telephone service. However, no facts exist to show that Defendants called the Plaintiff in a targeted manner. Moreover, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

61. Plaintiff has sufficiently pled at the pleading stage more than adequate facts to support a showing that the system Defendants used to contact the Plaintiff meets the definition of an ATDS and that Defendants used random or sequential methods to select numbers to be called.

62. The most obvious such non-random and non-sequential criteria, political affiliation, is obviously lacking here since the Plaintiff has never voted nor registered Democrat. Moreover, if Defendants do proffer a potential criterion other than random or sequential selection used to make the calls, Plaintiff is nevertheless entitled to discovery on that issue to determine whether or not such a criteria was used in the Plaintiff's case and whether or not it was truly neither random nor sequential. This is a summary judgment issue, not a motion to dismiss one.

Defendants' Conduct Violates the TCPA

63. Defendants cooperated to send the calls. The Mongomery County Democratic Committee engaged with the Montco Victory to send the message for the Mongomery County Democratic Committee and candidates' ultimate benefit.

64. At this stage, it is unclear if Montco Victory sent the calls itself using the Montgomery County Democratic Committee's funds, or if the Mongomery County Democratic Committee directed Montco Victory to send the message using Montco Victory's funds. Regardless, the Mongomery County Democratic Committee would be liable because the Mongomery County Democratic Committee "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

65. As evidenced by stating that they were calling from the "Montgomery County Democrats," the Mongomery County Democratic Committee's name recognition, ratification, and control played a central role in the calling campaign, even if such campaign was solely purportedly carried out only by Montco Victory.

66. Moreover, the Mongomery County Democratic Committe appears to have maintained interim control over Montco Victory's actions, as they operated out of the same address and shared the same chairman.

67. A May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." 28 FCC Rcd at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

68. The Plaintiff never provided his consent or requested the calls.

69. The calls were not necessitated by any emergency.

70. Plaintiff was harmed by the calls. He was temporarily deprived of legitimate use of his telephone and his privacy was improperly invaded. The Plaintiff was charged for the calls. Moreover, they injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

### Legal Claims
### Count One:
### Violation of the TCPA's Prohibition Against Automated Messaging With an Automatic Telephone Dialing System (ATDS)

71. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

72. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending message(s), except for emergency purposes, to the telephone number(s) of Plaintiff using an ATDS.

73. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

74. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number using an ATDS in the future.

75. The Defendants' violations were willful and/or knowing.

## **Relief Sought**

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **January 12, 2023**

_____/s/_____
Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com