IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW R. PERRONG, *Plaintiff*, v. MONTGOMERY COUNTY DEMOCRATIC COMMITTEE et al., *Defendants*. | Civil Action No. 22-cv-4475 |

MEMORANDUM OPINION

**GOLDBERG, J.**                                                             July 18, 2023

Plaintiff Andrew Perrong ("Perrong") brings claims under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, against Defendants Montgomery County Democratic Committee, Montco Victory, and Joseph Foster (collectively, "Defendants"), based on three phone calls Perrong received urging him to vote for Montgomery County Democratic candidates. Perrong alleges that Defendants violated the TCPA by calling his phone using an automatic telephone dialing system ("ATDS").

Defendants have moved to dismiss Perrong's complaint for failure to state a claim. For the reasons set out below, the motions will be granted.

**I.    FACTS**

The following facts are taken from Perrong's Amended Complaint and will be viewed in the light most favorable to him as the nonmoving party:

- Defendants are two political action committees (PACs) that support Democratic Party candidates in Montgomery County, Pennsylvania, and Joseph Foster, who was the chairman of both PACs at the relevant times. (Amended Complaint ¶¶ 5-7.)

1

- Defendants placed three calls to Perrong's phone, on October 22, 23, and 24, 2019. (Id. ¶ 28.)

- The first two calls went to voicemail but no voicemail message was left. (Id. ¶ 35.)

- Perrong answered the third call. When he did so, there was "an almost 10-second delay, silence, and an audible 'click' and call center noise before the caller on the other side came onto the line." The caller then asked Perrong when he planned to fill out an absentee ballot to vote for Montgomery County Democrat candidates and informed Perrong that the call was "paid for by the Montco Victory." (Id. ¶¶ 39-43.)

- Perrong has never registered to vote as a Democrat, never voted for a Democrat, "and is not a liberal left-winger." (Id. ¶ 45.)

- The calls were made using a service called Twilio. "Twilio provides a computerized platform designed for making high volumes of automated, sequential or random calls, primarily through being connected to an [automatic telephone dialing system ('ATDS')]. Twilio's website boasts the ability for its customers to make calls with 'indefinite scaling,' support up to 250 participants at a time, and mask caller information." (Id. ¶¶ 37-38, 53.)

- Perrong's phone carrier is a voice-over-internet-protocol (VoIP) provider that charges Perrong for each call received. (Id. ¶¶ 29-30.)

Based on the nature of the calls—the lack of voicemails, the ten-second delay, the use of a service provider that specializes in automated calls, and the calls' lack of relevance to him personally—Perrong infers that "Defendants selected numbers to be called sequentially (or possibly randomly) and then used publicly-available databases to identify the owner of the telephone number dialed when such randomly or sequentially selected call was answered." Thus, Perrong surmises that "Defendants used an ATDS, such as one which 'use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list.'" (Amended Complaint ¶¶ 46, 52 (quoting Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1117 n.7 (2021)).)

II. <u>LEGAL STANDARD</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

2

544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, … assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

**III.    DISCUSSION**

The TCPA prohibits, among other things, "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to … any service for which the called party is charged for the call … ." 47 U.S.C. § 227(b)(1)(A). There is no dispute that Perrong has plausibly alleged that non-emergency calls were made to his telephone number and

that he was charged for each call. Instead, the parties dispute whether those calls were placed using an "automatic telephone dialing system."[1] Some discussion of that term is therefore necessary.

The statute defines an "automatic telephone dialing system" (ATDS) as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator; and … to dial such numbers." 47 U.S.C. § 227(a)(1). "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1167 (2021). Although neither the statute, associated regulations, nor case law provides examples of such devices, the statutory language seems to suggest that such a device would dial seven (or ten) random digits or sequentially call all numbers in a given area code, i.e., (215), 000-0001, (215) 000-0002, and so on.

At issue in this case is how the definition of an ATDS applies to a device that does not generate phone numbers from scratch but instead uses a stored list of numbers and "randomly" or "sequentially" dials all the numbers on that list. The Amended Complaint does raise a plausible inference that Defendants placed the calls at issue by using a list of phone numbers (such as a list of numbers corresponding to all registered voters in Montgomery County) and randomly or sequentially calling all numbers on that list. (See Perrong's Brief, ECF No. 14, at 13; Montgomery County Democratic Committee's Brief, ECF No. 11-3, at 8.) Perrong does not argue that the Amended Complaint raises the further inference that Defendants placed the calls by generating

---

[1] Defendant Montgomery County Democratic Committee additionally argues that Perrong's complaint should be dismissed as to it because the calls were placed by Defendant Montco Victory, a separate entity. Because I find that Perrong has not plausibly alleged the used of an automatic telephone dialing system, I do not address this alternative ground.

4

phone numbers randomly or sequentially from scratch—i.e., by generating seven random digits or by calling all the numbers (215) 000-0001, (215) 000-0002, and so on.

Thus, the only dispute seems to be whether a device qualifies as an ATDS if it randomly or sequentially dials all phone numbers on a previously compiled list, such as a list of registered voters. Perrong argues that such a device meets the statutory definition because it randomly or sequentially "produces" the numbers to be dialed. Defendant disagrees, primarily relying on the Third Circuit's decision in Panzarella v. Navient Sols., Inc., 37 F.4th 867 (3d Cir. 2022), discussed below.

Neither the Third Circuit nor the Supreme Court has squarely addressed whether calling all numbers on a previously compiled list randomly or sequentially violates the TCPA. The closest precedent on point is Panzarella v. Navient Sols., Inc., 37 F.4th 867 (3d Cir. 2022), where the defendant was a student loan servicer that placed calls from a stored "contact list" in an automated fashion. Id. at 870. In holding that the defendant's actions did not violate the TCPA, the Third Circuit contrasted "dial[ing] … telephone numbers imported from … [a] customer list" with "dial[ing] random or sequential telephone numbers" and stated that only the latter would amount to prohibited use of an ATDS. Id. at 881.

This statement in Panzarella seems to mean that calling numbers from a list does not amount to generating numbers randomly or sequentially. However, the legality of list-based calling was not squarely placed at issue in Panzarella. Rather, the Third Circuit's opinion addressed only whether "use" of an ATDS requires using its random or sequential number-generating capabilities as opposed to its other features, and the court appeared to assume that calling numbers from a list did not qualify as random or sequential generation. See id. at 879 ("[T]o use an ATDS as an auto-dialer, one must use its defining feature—its ability to produce or store telephone numbers through

5

random- or sequential-number generation."). I thus view the statement that list-based calling is allowed under the TCPA as dictum. See id. at 875 n.9. Nevertheless, this dictum provides an indication that the Third Circuit does not view calling numbers on a list as generating those numbers randomly or sequentially. See United States ex rel. Bahnsen v. Bos. Sceintific Neuormodulation Corp., No. 11-cv-1210, 2017 WL 6403864, at *14 (D.N.J. Dec. 15, 2017) (dictum is evidence of how a court would rule).

In the absence of binding precedent, the statutory language is instructive. The statutory definition of an ATDS requires that it use a random or sequential number "generator." Under the ordinary meaning of that term, selecting numbers from a list is not "generating" those numbers. See "generate," Merriam-Webster, https://www.merriam-webster.com/dictionary/generate ("to bring into existence"). By contrast, selecting seven random digits and stringing them together into a phone number would be generating that phone number. Therefore, a device that randomly or sequentially calls all phone numbers in a previously compiled list would not qualify as an ATDS (so long as the numbers in the list were not themselves randomly or sequentially generated).

The Ninth Circuit has adopted this view and held that calling phone numbers from a stored list does not violate the TCPA. Borden v. eFinancial, LLC, 53 F.4th 1230, 1233 (9th Cir. 2022). The court reasoned that the phrase "random or sequential number generator" means "random or sequential telephone number generator." Id. Therefore, generating a sequence of (non-telephone) numbers (e.g., 1, 2, 3, …) and using those numbers to select the first, second, and third phone numbers in a list does not count as generating sequential phone numbers. See id.

In sum, I am persuaded by the statutory term "generator," the Third Circuit's dictum in Panzarella, and the Ninth Circuit's decision in Borden that calling all phone numbers on a

6

previously compiled list randomly or sequentially, as alleged here, does not violate the TCPA, provided the numbers in the list were not themselves generated randomly or sequentially.

To support his argument that list-based calling is prohibited, Perrong relies on a footnote in the Supreme Court's Facebook decision stating that "an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list." Facebook, 141 S. Ct. at 1172 n.7. The opinion offers this as an example of how an ATDS might "store" phone numbers using a random number generator, rebutting an argument that the phrase "store and produce" is redundant. But the opinion then adds that "even if the storing and producing functions often merge, Congress may have 'employed a belt and suspenders approach' in writing the statute." Id. Perrong reads this footnote to mean that using a random number generator to select phone numbers from a stored list violates the TCPA. However, I note that list-based calling was not at issue in Facebook. See Borden, 53 F.4th at 1235.

Perrong also points to a statement in Panzarella that "Congress understood not only that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications, … but also that they were increasingly relying on computerized databases containing telephone numbers during their dialing campaigns[.]" Panzarella, 37 F.4th at 880. In context, however, it is not clear that the Third Circuit meant to suggest that "relying on computerized databases containing telephone numbers" would violate the TCPA. The cited legislative history is equally susceptible to a reading that Congress meant to encourage the use of calling lists over truly random or sequential number generation as only the latter risked accidentally calling emergency numbers. See H.R. Rep. 102-317, 1991 WL 245201, at *7-8 (Nov. 15, 1991).

I also note that Perrong concedes, as he must, that list-based calling would not violate the TCPA if the selection of numbers in the list were "based on specific criteria," such as the calls in

7

Panzarella to a list of delinquent borrowers. On the facts of this case, Perrong suggests that it might be legal for a political action committee to "generate a list of Democrats and Independents voting fewer than five times, list [certain phone numbers], and personally encourage [those individuals] to vote more often" in contrast to making calls "en masse either randomly or sequentially to every registered voter in Montgomery County." (Perrong's Brief, ECF No. 14, at 11-13.) But the words "using a random or sequential number generator" are not susceptible to an interpretation that list-based calling is allowed only so long as the list is reasonably curated. Either a random or sequential number generator is used or it is not.

Given all of the above, I conclude that Perrong has not stated a claim against any Defendant for violating the TCPA, and will grant the motions to dismiss.

"[W]here a defendant moves to dismiss a deficient complaint, the court should grant leave to amend unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 110 (3d Cir. 2002). Perrong's Amended Complaint unambiguously alleges that Defendants used a list of phone numbers to place calls, and Plaintiff has not argued that he could allege that Defendants generated random or sequential phone numbers from scratch. (See Amended Complaint ¶¶ 51-52, 54, 56.) The issue of whether the alleged calls were placed with an ATDS was raised in Defendant Montgomery County Democratic Committee's prior motion to dismiss (ECF No. 6), and Perrong amended his complaint since then. I therefore conclude that further amendment would be futile.

IV. **CONCLUSION**

For the reasons set out above, Defendants' motions to dismiss will be granted.

An appropriate order follows.